IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DILLE, | Civil Action |
| Plaintiff, | No. 2:22-cv-1109 |
| v. | |
| LYDALL, INC. d/b/a ALKEGEN; UNIFRAX LLC REDUCTION IN FORCE PROGRAM; UNIFRAX I, LLC.; and THE EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, | JURY TRIAL DEMANDED |
| Defendants. | |

## CIVIL COMPLAINT

Plaintiff, Jane Dille, by undersigned counsel, files this Civil Complaint, and in support states the following.

### I. Jurisdiction and Venue

1. Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331; its supplemental jurisdiction pursuant to 28 U.S.C. § 1367; its diversity jurisdiction pursuant to 28 U.S.C. § 1332; and its exclusive jurisdiction over determining the applicability of ERISA pursuant to 29 U.S.C. § 1132(e)(1).

2. After accounting for attorneys' fees and liquidated damages, the amount in controversy for Plaintiff's state law claims exceeds $75,000.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1332(e)(2) because a substantial part of the events giving rise to Plaintiff's claims, including the breach alleged herein, occurred in Allegheny County, Pennsylvania.

1

## II. Parties

4. Plaintiff, Jane Dille, is an adult individual who resides in Allegheny County, Pennsylvania.

5. Defendant, Lydall, Inc. ("Lydall"), is a Delaware corporation with a principal place of business located at One Colonial Road, Manchester, Connecticut 06042.

6. Defendant Lydall is a wholly-owned subsidiary of ASP Unifrax Holdings, Inc. ("Unifrax").

7. Both Unifrax and Lydall do business under the unregistered fictitious name Alkegen.

8. Defendant, Unifrax LLC Reduction in Force Program ("Program"), purports to be an ERISA (Employee Retirement Income Security Act) plan sponsored by Unifrax I, LLC and administered by the Employee Benefits Administrative Committee ("Committee"). Its agent for service of legal process is General Counsel, c/o Lydall Inc., One Colonial Road, Manchester, Connecticut 06042.

9. Defendant Unifrax I, LLC ("Unifrax I") is the Sponsor and implementer of the Program. It is a Delaware limited liability company with a principal place of business located at 600 Riverwalk Parkway, Suite 120, Tonawanda, New York 14150.

10. Defendant Committee is the administrator of the Program, and has a principal place of business located at 600 Riverwalk Parkway, Suite 120, Tonawanda, New York, 14150.

11. Defendant Committee consists of Unifrax/Lydall's Chief Human Resources Officer, General Counsel, and Senior Director of Total Rewards, acting in their official capacities as employees.

### III. Factual Background

**A. The Merger**

12.  In the summer of 2021, Lydall announced that it would be acquired by Unifrax, and that, as a result, layoffs were likely to occur.

13.  As announced in the Summer of 2021, Unifrax acquired Lydall, with Lydall surviving the merger as a wholly-owned subsidiary of Unifrax. Lydall and Unifrax then elected to do business as Alkegen.

14.  As a result of the merger, at least 75 positions were eliminated.

**B. Ms. Dille's Position**

15.  Ms. Dille was employed by Defendant Lydall as a Payroll and HRIS Manager from November 9, 2020 to April 29, 2022.

16.  Ms. Dille worked in Pittsburgh, PA and was a Pennsylvania employee.

17.  In October 2021, Lydall, through Senior Director, Total Rewards Carla Byrne, informed Ms. Dille that her position would be eliminated due to a redundancy effective July 1, 2022.

18.  Ms. Byrne further told Ms. Dille that Erin D'Angelo, the Payroll and HRIS Manager for Unifrax, would assume Ms. Dille's duties effective July 1, 2022, and as a result, Ms. Dille would be terminated on July 1, 2022.

19.  During the above-referenced discussion, Ms. Byrne told Ms. Dille that she would receive a six-month severance, and that she would also receive a retention bonus if she agreed to remain employed through July 1, 2022.

20.  On or about October 22, 2021, Ms. Dille and Lydall executed a Retention Agreement, a copy of which is attached as Exhibit 1.

21. The Retention Agreement provided, in relevant part, that Ms. Dille would receive a retention bonus if she "remains an employee of the Company as the Payroll & HRIS Manager, encompassing and performing all of the responsibilities that exist in the role today until July 1, 2022."

22. Following the execution of the Retention Agreement in October 2021, Ms. Dille continued to work diligently and without any performance deficiencies.

23. Ms. Dille intended to continue to work through July 1, 2022, as agreed.

24. However, on April 29, 2022, Lydall abruptly terminated Ms. Dille's employment effective immediately, claiming her termination was for business reasons associated with the merger.

25. At the time of Ms. Dille's termination, she still had uncompleted tasks left to be done.

26. Upon Ms. Dille's termination, Ms. D'Angelo assumed Ms. Dille's duties as Payroll and HRIS Manager.

**C. The Unifrax Reduction in Force Program**

27. On or about November 15, 2021, Unifrax first adopted the Unifrax Reduction in Force Program.

28. On or about January 15, 2022, Unifrax amended and restated the Program. A copy of the Program, as amended and in effect at all times relevant hereto, is attached as Exhibit 2.

29. The purpose of the Program, by its terms, is "to provide severance benefits to certain employees who terminate employment with the Company (or an affiliated entity under common control with the Company as determined under section 414 of the Internal Revenue Code) in connection with a reduction in force associated with the acquisition of Lydall, Inc.by the

Company. The Company and affiliated entities are referred to as the 'Employer' in this document."

(Exhibit 2 at 1).

      30.    The Program defines "Eligible Employee" as follows:

          (1) You were an employee of the Employer on October 1, 2021.

          (2) Your employment with the Employer is terminated between November 15, 2021 and December 31, 2022 and you were a U.S.-based employee not covered by a collective bargaining agreement at the time your employment terminated.

          (3) The Company classifies your termination as resulting from position redundancy or efficiency created by the acquisition of Lydall, Inc.

(Exhibit 2 at 2).

      31.    The Program provides Eligible Employees with a lump sum payment of a minimum of 8 weeks of base pay for exempt employees (Exhibit 2 at 2-3).

      32.    The Program provides, "In addition, an Eligible Employee who (i) terminates employment in 2022, (ii) was notified of his or her termination date on or before January 15, 2022, and (iii) otherwise qualifies for benefits under this Program will receive additional benefits as follows:

- 4 additional Weeks of Base Pay if the termination of employment date is from January 1, 2022 through March 31, 2022;

- 8 additional Weeks of Base Pay if the termination of employment date is from April 1, 2022 through June 30, 2022.

- 12 additional Weeks of Base Pay if the termination of employment date is from July 1, 2022 through December 31, 2022."

(Exhibit 2 at 3).

      33.    Additionally, the Program provides for continuation of medical, dental, and EAP (Employee Assistance Program) coverage for the period of time equal to the number of weeks of base pay to which the Eligible Employee is entitled. (Exhibit 2 at 4-5).

34. The severance funds paid pursuant to the Program were funded through Lydall's ordinary payroll account, as opposed to a fund dedicated solely to the Program.

35. As the Payroll and HRIS Manager for Lydall, Ms. Dille implemented the payment of severances for all legacy Lydall employees who were eligible for severance pursuant to the Program.

36. Initially, an outside vendor tracked the payment of severances pursuant to the Program for Lydall employees. However, an HRIS Analyst employed by Lydall later assumed this responsibility.

**i. Ms. Dille is qualified for the Program.**

37. Ms. Dille was an Employee of the Employer, as defined in the Program, on October 1, 2021.

38. Ms. Dille's employment was terminated between November 15, 2021 and December 31, 2022.

39. Ms. Dille was a U.S.-based employee not covered by a collective bargaining agreement at the time of her termination.

40. The Company, as defined in the Program, classified Ms. Dille's termination as resulting from position redundancy or efficiency created by the acquisition of Lydall, Inc.

41. Ms. Dille was an exempt employee.

42. Ms. Dille's employment was terminated in 2022.

43. Ms. Dille was notified of her termination date on or before January 15, 2022.

44. Ms. Dille's termination of employment date was between April 1, 2022 and June 30, 2022.

45. But for Lydall's premature termination of Ms. Dille, her termination of employment date would have been between July 1, 2022 and December 31, 2022.

**ii. Defendants breached the promises set forth in the Program.**

46. On April 29, 2022, Lydall Senior Director of Human Resources Anthony Justice provided Ms. Dille a proposed Separation Agreement and General Release ("Separation Agreement"), which contained a release of all possible claims that Ms. Dille may have against Lydall and its current and former parents, affiliates, related entities through common identity of ownership or control, subsidiaries and all of their current or former officers, directors, employees or agents, and related parties, and/or all of their heirs, executors, assigns, attorneys, agents, partners and insurers."

47. The Separation Agreement offered Ms. Dille a total of eight (8) weeks of severance pay.

48. The Separation Agreement also offered Ms. Dille a total of an equivalent number of weeks of subsidized COBRA medical and dental benefits, rounded up to the nearest month.

49. The Separation Agreement provided that "Employer" would pay the above severance benefits. "Employer" is defined as "Lydall, Inc. and its current and former parents, affiliates, related entities through common identity of ownership or control, subsidiaries and all of their current or former officers, directors, employees or agents, and related parties, and/or all of their heirs, executors, assigns, attorneys, agents, partners and insurers."

50. Approximately thirty minutes after receiving the Separation Agreement, Ms. Dille notified Mr. Justice via email, "It appears to me in reading page 19 of the document Section III, A. Lump Sum payment paragraph 2 that I am due an additional 8 weeks of severance as my

termination of employment date is from April 1, 2022 through June 30, 2022. The original date I was given as is stated in my retention bonus letter was July 1, 2022."

51. Mr. Justice responded, "according to the approved ERISA document that guides the way we handle these situations…..you are not eligible for the additional 8 weeks of severance" (ellipsis in original).

**iii. Ms. Dille requested her wages and timely appealed.**

52. Thereafter, Ms. Dille, through counsel, timely filed a claim disputing the offer of severance pay under the Claim Procedure set forth in the Program.

53. The Program and Committee, through Alkegen/Lydall's General Counsel, denied Ms. Dille's claim for additional severance pay.

54. The Program and Committee further notified Ms. Dille of her rights to pursue further action under ERISA Section 502.

55. The Program and Committee denied Ms. Dille's appeal and notified her of her ERISA rights on Alkegen/Lydall letterhead, stating "Alkegen hereby denies Ms. Dille's claim for additional separation pay."

56. Ms. Dille, through counsel, informed Defendants, through counsel, that she would be willing to execute a release of all claims in exchange for 8 weeks of severance pay, if they would allow her to pursue "claims associated with the difference between what Ms. Dille believes she is owed under the plan and the 8 weeks Alkegen has offered."

57. Defendants have refused to make any modifications to the release agreement to carve out the claims set forth herein.

58. As such, Ms. Dille is unable to fulfill the Program condition of signing a release, because doing so would require her to release her rights to bring this action.

59. On or about July 22, 2022, Defendant Lydall paid Ms. Dille the agreed-upon retention bonus, in recognition of the fact that she had committed to working through July 1, 2022.

60. However, no Defendant has paid Ms. Dille any severance pay or benefits.

## COUNT I
### Wage Payment and Collection Law
### Dille v. Lydall, Unifrax I, and Committee

61. Plaintiff incorporates the allegations of Paragraphs 1 through 60 as if fully restated.

62. The severance pay set forth in the Program constitutes "wages" within the meaning of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.2a.

63. The subsidization of COBRA medical and dental benefits also constitute wages within the meaning of the WPCL.

64. The Program is not a plan preempted by the Employee Retirement Income Security Act (ERISA) in that it:

   a. it does not implicate an ongoing administrative scheme;

   b. it provides for a lump sum payment as opposed to ongoing payments;

   c. it provides for objective eligibility criteria that does not implicate employer discretion; and

   d. it is funded through an existing company payroll account rather than through a separate fund.

65. Pursuant to the terms of the Program, Ms. Dille was eligible for a total of sixteen weeks of severance and COBRA subsidies: 8 weeks as a minimum, plus an additional 8 weeks for being terminated between April 1, 2022 and June 30, 2022.

66. Ms. Dille was an Eligible Employee under the Program, and otherwise met all criteria for receipt of 16 weeks of severance pay.

67. Defendants failed to pay Ms. Dille wages by the next regular payday, or at any other time.

68. Defendant Lydall was Ms. Dille's employer.

69. Defendant Lydall made and/or participated in the decision to deny severance pay to Ms. Dille, including through the decisions and/or actions of Ms. Byrne, Mr. Justice, and/or General Counsel.

70. Defendant Committee, as the administrator of the Program, also made and/or participated in the decision to deny severance pay to Ms. Dille.

71. Defendant Unifrax I, as the sponsor implementer of the Program, also made and/or participated in the decision to deny severance pay to Ms. Dille.

72. As such, Defendants Lydall and Committee are "employers," within the meaning of the WPCL, 43 Pa. Stat. § 260.2(a).

73. Defendants' failure to pay Ms. Dille wages is a violation of the WPCL, 43 Pa. Stat. §260.3(a).

74. More than 30 days have passed since the regularly-scheduled payday at issue.

75. Defendants' failure to pay Ms. Dille is not due to a good faith dispute regarding whether the wages are owed.

76. Therefore, pursuant to 43 Pa. Stat. § 260.10, Ms. Dille is also entitled to liquidated damages equal to 25% of the total amount of wages due.

**Count II**
**Breach of Contract**
**Dille v. Lydall, Unifrax I, and Committee**

77. Plaintiff incorporates the allegations of Paragraphs 1 through 76 as if fully restated.

78. In a written unilateral contract (Exhibit 2), Defendants Lydall, Unifrax I, and

Committee agreed to pay Ms. Dille a salary and benefits, as set forth above and therein.

79. The contract was supported by consideration, in that Ms. Dille continued to work in reliance on the promises made therein.

80. By failing to pay the agreed-upon severance pay and benefits, Defendants materially breached their contract with Ms. Dille.

81. Defendants' breach of contract caused Ms. Dille damages in the form of unpaid wages and benefits.

## Count III (Pleaded in the Alternative)
## ERISA Section 502
## Dille v. Program, Committee, and Lydall

82. Plaintiff incorporates the allegations of Paragraphs 1 through 81 as if fully restated.

83. To the extent that the Court determines the Program is governed by ERISA, then the Program is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1).

84. Ms. Dille is a "participant" in the Program within the meaning of 29 U.S.C. § 1002(7).

85. By failing to provide Ms. Dille at least 16 weeks of severance pay and benefits, Defendants Program, Committee, and Lydall materially breached the plain language of the Program.

86. Defendant Committee acted in a fiduciary capacity by exercising control over the administration of the Program, and by being tasked with interpreting the terms of the Program.

87. Defendant Lydall acted in a fiduciary capacity by exercising control over the administration of the Program, in the following ways:

   a. All members of the Committee were Lydall employees;

   b. Ms. Byrne explained the Program to Ms. Dille in her capacity as a Lydall

       employee;

    c. the Program was funded through a general Lydall payroll account;

    d. Lydall employees managed the implementation of the Program; and

    e. The communications denying Ms. Dille's claim under the Program came on Alkegen letterhead, and claimed that Alkegen, rather than the Program, was denying her claims.

88. Defendants' failure to pay Ms. Dille severance pay and benefits was arbitrary and capricious.

89. Ms. Dille has satisfied all administrative prerequisites set forth in the Program before bringing this action.

90. As such, to the extent that this Court determines that the Program is governed by ERISA, then Ms. Dille seeks, pursuant to 29 U.S.C. § 1132a(1)(B), to recover benefits due her under the terms of the Program and to enforce her rights under the Program.

91. Ms. Dille further seeks appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3).

**Count IV (Pleaded in the Alternative)**
**ERISA Section 510**
**Dille v. Lydall**

92. Plaintiff incorporates the allegations of Paragraphs 1 through 91 as if fully restated.

93. To the extent that this Court determines the Program is governed by ERISA, then Defendant Lydall terminated Ms. Dille's employment earlier than anticipated for the purpose of interfering with the attainment of rights under an employee benefit plan, in violation of ERISA Section 510, 29 U.S.C. § 1140.

94. Specifically, Lydall interfered with Ms. Dille's right to receive twelve (12)

additional weeks of severance pay and benefits she was due to receive if she remained employed through July 1, 2022, and/or to interfere with the right to eight (8) additional weeks of severance pay and benefits that she was due to receive if terminated between April 1 and June 30, 2022.

95. Lydall's intent not to pay Ms. Dille severance was a determinative factor in its decision to terminate her employment early.

96. As a direct and proximate result of Lydall's actions as set forth above, Ms. Dille is entitled to equitable relief, including but not limited to twelve (12) weeks of severance pay and benefits.

WHEREFORE, Plaintiff demands judgment against Defendants and the following relief:

a. Damages for unpaid severance pay and benefits under Counts I and II, or in the alternative, equitable relief in the form of unpaid severance pay and benefits under Counts III and IV;

b. Liquidated damages equal to 25% of the total unpaid wages under Count I;

c. Any reasonably foreseeable consequential damages under Count II;

d. Prejudgment interest and post-judgment interest under all Counts;

e. A gross-up to account for any negative tax consequences arising of out of the judgment under all Counts; and

f. Reasonable costs and attorneys' fees under Counts I, III, and/or IV; and

g. Any other equitable relief that the Court deems just and proper.

Respectfully submitted,

| **MCELROY LAW FIRM, LLC** | **ELZER LAW FIRM, LLC** |
|---|---|
| /s/ Rachel L. McElroy | /s/ Christine T. Elzer |
| Rachel L. McElroy | Christine T. Elzer |
| Pa. I.D. No. 321624 | Pa. ID No. 208157 |
| 100 First Avenue | Tamra Van Hausen |
| Suite 1010 | Pa. I.D. No. 330577 |
| Pittsburgh, PA 15222 | 100 First Avenue |
| (412) 620-8735 | Suite 1010 |
| rachel@mcelroylawfirm.com | Pittsburgh, PA 15222 |
|  | (412) 230-8436 |
|  | (412) 206-0855 (fax) |
|  | celzer@elzerlaw.com |
|  | tvanhausen@elzerlaw.com |

Attorneys for Plaintiff